1

2

3

4                        UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6                                SAN JOSE DIVISION

7

8    GS HOLISTIC, LLC,                      Case No.  22-cv-07634-VKD

9                        Plaintiff,         **ORDER FOR REASSIGNMENT TO A**
                                            **DISTRICT JUDGE; REPORT AND**
10            v.                            **RECOMMENDATION RE MOTION**
                                            **FOR DEFAULT JUDGMENT**
11   PUFF N GO GIFT SHOP LLC, et al.,
                                            Re: Dkt. No. 22
12                       Defendants.

13

14          Plaintiff GS Holistic, LLC ("GS") filed this action for alleged trademark infringement and

15   false designation of origin against Puff N Go Gift Shop, doing business as Puff N Go Smoke Shop

16   ("Shop"), Mohamed Alganim, and Abdullah Kaid Alawdi.  Defendants failed to appear, and the

17   Clerk of the Court entered default against each of them.  *See* Dkt. Nos. 18, 21.

18          GS now moves for default judgment.  Dkt. No. 22.  The Court found the matter suitable for

19   determination without oral argument and vacated the June 20, 2023 motion hearing.  *See* Civil

20   L.R. 7-1(b); *see also* Dkt. No. 26.  Although the record indicates that GS mailed its motion papers

21   to each defendant (*see* Dkt. No. 23), defendants have not responded to the motion for default

22   judgment.

23          GS has consented to proceed before a magistrate judge.  Dkt. No. 7.  However, no

24   defendant has appeared, and all defendants are in default.  This Court therefore does not have the

25   consent of all parties.  *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; *Williams v. King*, 875 F.3d 500

26   (9th Cir. 2017).  Accordingly, the Court directs the Clerk of the Court to reassign this action to a

27   district judge, with the following report and recommendation that GS's motion for default

28   judgment be denied.

United States District Court
Northern District of California

United States District Court
Northern District of California

**REPORT AND RECOMMENDATION**

## I.    BACKGROUND

According to its complaint, GS is a Delaware limited liability corporation with its principal place of business in Los Angeles, California.  Dkt. No. 1 ¶ 5.  GS says that since 2020, it has marketed and sold products, such as high-quality glass infusers and related accessories that "facilitate a superior smoking experience," under STÜNDENGLASS trademarks.  *Id*. ¶¶ 8, 9.  The complaint further alleges that GS owns three STÜNDENGLASS registered trademarks ("Stündenglass Marks"):

- "U.S. Trademark Registration Number 6,633,884 for the standard character mark 'Stündenglass' in association with goods further identified in registration in international class 011";

- "U.S. Trademark Registration Number 6,174,292 for the design plus words mark 'S' and its logo in association with goods further identified in the registration in international class 034"; and

- "U.S. Trademark Registration Number 6,174,291 for the standard character mark 'Stündenglass' in association with goods further identified in registration in international class 034."

*Id*. ¶¶ 11, 12.  GS sells products under the Stündenglass Marks to about 3,000 authorized stores in the United States, including in California.  *Id*. ¶ 20.  According to the complaint, "GS's Stündenglass branded products are made from superior materials," and the "Stündenglass Marks are distinctive to both the consuming public and [GS]'s trade" and "are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from GS."  *Id*. ¶¶ 14, 15.  GS alleges that consumers "are willing to pay higher prices for genuine Stündenglass products," noting that "a Stündenglass brand glass infuser is priced at $599.95," while non-Stündenglass products are sold at prices ranging from $199 to $600.  *Id*. ¶ 21.

The defendant Shop is alleged to be a California corporation with its principal place of business in Berkeley, California that "has engaged in the unlawful manufacture, retail sale, and/or wholesale sales of counterfeit Stündenglass glass infusers."  *Id*. ¶ 6.  Messrs. Alganim and Alawdi

are identified as the Shop's owners, who "owned, managed, and/or operated" the Shop and regularly exercised the authority to purchase products, decide which products the Shop offered for sale, hire and fire employees, and control the Shop's finances and operations. *Id.* at 1; *see also id.* ¶ 7. GS claims that defendants have unlawfully sold "substantially inferior" goods bearing counterfeit STÜNDENGLASS marks. *Id.* ¶¶ 25-32, 34, 39, 41. Specifically, the complaint alleges that on November 7, 2022, GS's investigator purchased from the Shop a glass infuser, "with a Stündenglass Mark affixed to it," at a price of $331.25. *Id.* ¶¶ 29-31. GS says that an "inspection" confirmed that the infuser sold to the investigator was counterfeit. *Id.* ¶ 31. Defendants' use of the counterfeit Stündenglass Marks allegedly "began long after" the marks were registered. *Id.* ¶ 33. GS claims that defendants' use of the counterfeit marks is likely to cause customer confusion, divert sales from legitimate Stündenglass retailers, and has damaged the goodwill and reputation associated with GS's Stündenglass Marks. *Id.* ¶¶ 35-38, 42.

GS asserts Lanham Act claims for "[t]rademark [c]ounterfeiting and [i]nfringement, 15 U.S.C. § 1114" (claim 1) and for "[f]alse [d]esignation of [o]rigin and [u]nfair [c]ompetition, 15 U.S.C. § 1125(a)" (claim 2). *Id.* ¶¶ 53-70. The complaint seeks statutory and trebled damages, costs, preliminary and permanent injunctive relief, and other equitable relief. *Id.* at 13-15. In its motion for default judgment, GS requests $50,000 in statutory damages for each of the three trademarks at issue, for total statutory damages of $150,000; $993.25 in costs; a permanent injunction against the defendants; and an order requiring defendants to deliver to GS for destruction all products and other materials bearing any of the Stündenglass Marks. *See* Dkt. No. 22 at 10-11.

## II.     LEGAL STANDARD

Default may be entered against a party who fails to plead or otherwise defend an action. Fed. R. Civ. P. 55(a). After entry of default, a court may, in its discretion, enter default judgment. Fed. R. Civ. P. 55(b)(2);[1] *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In deciding

---

[1] A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared." Fed. R. Civ. P. 55(b)(2). There are no such issues presented here. Nor is there any indication that either of the individual defendants is a person in military service. *See* Dkt. No. 22-4 ¶ 5.

United States District Court
Northern District of California

1    whether to enter default judgment, a court may consider the following factors: (1) the possibility

2    of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of

3    the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute

4    concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong

5    policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.  *Eitel v.*

6    *McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  In considering these factors, all factual

7    allegations in the plaintiff's complaint are taken as true, except those relating to damages.

8    *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).  Courts may hold a

9    hearing to conduct an accounting, determine the amount of damages, establish the truth of any

10   allegation by evidence, or investigate any other matter.  Fed. R. Civ. P. 55(b)(2).

## III.    DISCUSSION

11    GS's motion for default judgment has several deficiencies.

### A.    Service of Process

14    While it appears that one defendant (Mr. Alawdi) has been properly served, it is not clear

15   that GS has properly served the other two defendants.  *See Rain Design, Inc. v. Spinido, Inc.*, No.

16   17-cv-03681-JSC, 2018 WL 7269019, at *2 (N.D. Cal. Nov. 15, 2018) ("A federal court does not

17   have jurisdiction over a defendant unless the defendant has been served properly under Fed. R.

18   Civ. P. 4.") (quoting *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d

19   685, 688 (9th Cir. 1988)).

20    The record indicates that Mr. Alawdi was personally served with the complaint and

21   summons on February 20, 2023 (Dkt. No. 14).  *See* Fed. R. Civ. P. 4(e)(2)(A) (individual

22   defendant may be served by delivering a copy of the summons and complaint to the individual

23   personally); *see also* Cal. Code Civ. Proc. § 415.10 (individual defendant may be served by

24   personal delivery of the summons and complaint to the individual).

25    With respect to the Shop, GS seems to rely on substituted service under California law, but

26   the circumstances surrounding service of process are somewhat ambiguous.[2]  Rule 4(h)(1)

---

[2] Aside from a general assertion that "[t]he defendants were served with the summons and Complaint" (Dkt. No 22 at 1), GS has not addressed service of process in its motion for default

United States District Court
Northern District of California

1    authorizes service of process on a domestic corporation in the manner prescribed by Rule 4(e)(1),

2    which allows for service by "following state law for serving a summons in an action brought in

3    courts of general jurisdiction in the state where the district court is located or where service is

4    made." *See* Fed. R. Civ. P. 4(e)(1), (h)(1).  Under California law, a corporation may be served by

5    "delivering a copy of the summons and the complaint . . . [t]o the person designated as agent for

6    service of process" or "[t]o the president, chief executive officer, or other head of a corporation, a

7    vice president, a secretary or assistant secretary, a treasurer or assistant treasurer, a controller or

8    chief financial officer, a general manager or person authorized by the corporation to receive

9    service of process."  Cal. Code Civ. Proc. § 416.10(a), (b).  In lieu of personal delivery, California

10   law permits substituted service on a person to be served under section 416.10 by (1) "leaving a

11   copy of the summons and the complaint during usual office hours in his or her office . . . with the

12   person who is apparently in charge thereof" and (2) "thereafter mailing a copy of the summons

13   and complaint by first-class mail, postage prepaid to the person to be served at the place where a

14   copy of the summons and complaint were left."  Cal. Code Civ. Proc. § 415.20(a).  "Service of a

15   summons in this manner is deemed complete on the 10th day after the mailing."  *Id.*

16       The proof of service for the Shop does not identify a registered agent authorized to accept

17   service on the Shop's behalf.  Rather, the record indicates that on February 12, 2023, the process

18   server left the complaint and summons with someone named Adam Isa at the Shop's address, and

19   later mailed the documents to no person in particular at the same address.  *See* Dkt. No. 13 at ECF

20   1, 5.[3]  In the Ninth Circuit, "service of process is not limited solely to officially designated

---

22   judgment.

23   [3] The process server also included a "Declaration of Reasonable Diligence," perhaps to support the
     adequacy of substituted service on an individual under California Code of Civil Procedure
24   § 415.20(b), which generally requires that personal service on an individual must first be
     attempted with "reasonable diligence" before a party can resort to substituted service.  *See Bein v.*
25   *Brechtel-Jochim Group, Inc.*, 6 Cal. App. 4th 1387, 1391-92 (1992) ("Ordinarily . . . two or three
     attempts at personal service at a proper place should fully satisfy the requirement of reasonable
26   diligence and allow substituted service to be made.") (internal quotations and citation omitted).
     As noted above, however, the proof of service did not identify any particular person to be served
27   on the Shop's behalf.  In any event, the process server's Declaration of Reasonable Diligence does
     not indicate that there were any prior attempts to personally serve anyone on the Shop's behalf.
28   *See* Dkt. No. 13 at ECF 4.

officers, managing agents, or agents appointed by law for the receipt of process," and GS's proof of service states that Mr. Isa indicated that he was "authorized to accept with identity confirmed by subject saying yes when named" and did "accept[] service with direct delivery." Dkt. No. 13. However, it is unclear who Mr. Isa is, i.e., whether he is "a representative so integrated with the organization that he will know what to do with the papers" and "who stands in such a position as to render it fair, reasonable and just to imply the authority on his part to receive service." *Direct Mail Specialists, Inc.*, 840 F.2d at 688.

While the record indicates that Mr. Alganim subsequently was personally served with the complaint and summons (*see* Dkt. No. 16), it appears that service was untimely. GS filed its complaint on December 4, 2022. *See* Dkt. No. 1. The deadline for completing service of process therefore was March 6, 2023. *See* Fed. R. Civ. P. 4(m); *see also* Fed. R. Civ. P. 6(a). The docket indicates that Mr. Alganim was not served until March 15, 2023. "If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). "But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." *Id.* GS did not seek an extension of time for service. Nor has it shown good cause for the failure to timely serve Mr. Alganim.

Even assuming that service might reasonably be deemed to have been completed as to all defendants, or that any technical deficiencies properly may be excused, for the reasons discussed below, GS has not adequately demonstrated that default judgment is warranted on the record presented.

**B.**    ***Eitel* Factors**

While GS addresses the *Eitel* factors in its motion for default judgment, its analysis is cursory and lacks specific analysis of how GS's factual allegations support its conclusions. *See* Dkt. No. 22 at 5-6. GS contends that its complaint "highlights clear and detailed evidence which would be sufficient to seek relief based on trademark infringement of its [Stündenglass] [M]arks had the case been adjudicated on the merits." Dkt. No. 22 at 6. However, this Court finds that

United States District Court
Northern District of California

with respect to the merits of GS's substantive claims and the sufficiency of GS's complaint (*Eitel* factors two and three), GS's allegations are not sufficient to support the entry of default judgment. *See generally Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002) ("With respect to the determination of liability and the default judgment itself, the general rule is that *well-pled* allegations in the complaint regarding liability are deemed true.") (emphasis added).

### 1.    Trademark infringement

To prevail on a trademark infringement claim, a plaintiff must show that (1) it has a valid, protectible trademark, and (2) the defendants' use of the mark is likely to cause confusion, or to cause mistake, or to deceive consumers.  15 U.S.C. § 1114(1); *Applied Info. Scis. Corp. v. eBay, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007); *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1134 (9th Cir. 2006).  Although GS alleges that it owns three registered marks (Dkt. No. 1 ¶¶ 11, 12), *see Applied Info. Scis. Corp.*, 511 F.3d at 970; 15 U.S.C. § 1115(a), its allegations are insufficient to support a finding that any defendant willfully infringed GS's trademarks.  Indeed, GS does not identify which of the three Stündenglass Marks at issue allegedly was infringed. While GS asserts in its motion that defendants sold "a glass infuser with three (3) fake Stündenglass Marks" (Dkt. No. 22 at 8), the complaint alleges only a single sale of one unidentified infuser product reportedly bearing an unspecified counterfeit mark.  *See* Dkt. No. 1 ¶¶ 29-31.  The complaint's allegations regarding willfulness are entirely conclusory (Dkt. No. 1 ¶¶ 43, 57, 58, 67), as are the assertions of GS's Chief Executive Officer, Christopher Folkerts regarding the same (Dkt. No. 22-5 ¶¶ 8, 17-18).[4]  While "[a] corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf," *Comm. for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 823 (9th Cir. 1996), GS's allegations

---

[4] The Court views with some skepticism GS's allegation that "[d]efendants' use of the counterfeit Stündenglass Trademarks began long after the registration of the Stündenglass Trademarks."  Dkt. No. 1 ¶ 33.  The complaint does not indicate when defendants allegedly began selling counterfeit products or provide any other details regarding their alleged sale of such products.  Publicly available trademark records on the U.S. Patent and Trademark Office's website (https://tsdr.uspto.gov) indicate that the registrations for two of the marks in question issued in October 2020, and that the third registration issued in February 2022 (i.e., seven months before the sole infringing sale alleged in the complaint).

concerning the individual defendants' ownership and control of the Shop are equally conclusory. *See* Dkt. No. 1 at 1 & ¶ 7.  "Particularly where, as here, a plaintiff seeks substantial damages for alleged infringement, the Court is reluctant to enter default judgment based only on allegations that are lacking in detail."  *See GS Holistic, LLC v. Alien Smoke Shop*, No. 2:22-cv-05622-JLS-DFM, 2023 WL 3402589, at *1-*2 (C.D. Cal. Mar. 17, 2023) (finding similar allegations of infringement insufficient to support entry of default judgment and denying motion for default judgment without prejudice).  *But see GS Holistic, LLC v. MSA-Bossy Inc.*, No. 22-cv-07638-JSC, 2023 WL 3604322, at *3 (N.D. Cal. May 22, 2023) (finding plaintiff's allegations sufficient to support trademark infringement claim only as to one mark).

### 2.     False designation of origin

To establish a claim for false designation of origin under 15 U.S.C. § 1125(a), a plaintiff must show:  "(1) the defendants used a false designation of origin; (2) the use occurred in interstate commerce; (3) that such false designation is likely to cause confusion, mistake or deception as to the origin, sponsorship, or approval of defendants' goods or services by another person; and (4) that plaintiff has been or is likely to be damaged."  *Hokto Kinoko Co. v. Concord Farms, Inc.*, 810 F. Supp. 2d 1013, 1039 (C.D. Cal. 2011).  "The elements of a claim for false designation of origin under § 1125 are virtually the same as the elements of a claim for trademark infringement under § 1114, although a § 1114 claim requires ownership of a registered trademark while a § 1125 claim does not."  *Iglesia Ni Cristo v. Cayabyab*, No. 18-cv-00561-BLF, 2020 WL 1531349, at *7 (N.D. Cal. Mar. 31, 2020).  The Court finds that GS's claim for false designation of origin is insufficient for the same reasons stated above with respect to GS's trademark infringement claim.  *See id.* (evaluating trademark infringement and false designation of origin claims together).

### C.     Requested Relief

GS seeks statutory damages, costs, and a permanent injunction and other equitable relief. For the reasons discussed below, on the present record, GS's requested relief is excessive and inadequately supported by GS's allegations or evidence.

United States District Court
Northern District of California

United States District Court
Northern District of California

### 1.     Statutory damages

GS requests a total of $150,000 in statutory damages for use of counterfeit marks, i.e., $50,000 for each of the three Stündenglass Marks identified in the complaint.  Under the Lanham Act, GS may elect to recover statutory damages, instead of actual damages and profits.  *See* 15 U.S.C. § 1117(c).  The Court may award statutory damages in an amount of "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just."  *Id.* § 1117(c)(1).  "[I]f the court finds that the use of the counterfeit mark was willful, [the Court may award] not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just."  *Id.* § 1117(c)(2).  "In determining the appropriate amount of statutory damages to award on default judgment, courts in this district have considered whether the amount of damages requested bears a plausible relationship to [a p]laintiff's actual damages."  *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1102 (N.D. Cal. 2014) (internal quotation marks and citations omitted).  "While a plaintiff in a trademark or copyright infringement suit is entitled to damages that will serve as a deterrent, it is not entitled to a windfall."  *Id.*

In the present case, GS's request for $150,000 in statutory damages (at $50,000 for each of the three Stündenglass Marks) is disproportionate to the complaint's allegations of only one sale of a single product, bearing one counterfeit mark, at a price of $331.25.  *See* Dkt. No. 1 ¶¶ 29-31. GS maintains that the requested statutory damages nonetheless are a fraction of losses that the company has sustained.  Mr. Folkerts attests that GS "has determined that at least 3 out of every 10 products sold is a counterfeit," and that in 2021, the company lost tens of millions of dollars in its U.S. sales due to the sale of counterfeit products  *See* Dkt. No. 22-3 ¶¶ 14-16.  However, GS offers no persuasive argument or authority that defendants appropriately may be held accountable for the alleged trademark violations of other retailers in the marketplace.  *See MSA-Bossy, Inc.*, 2023 WL 3604322 at *5 ("[C]ourts may consider deterrence, but must base a damages award on the particular defendant's violation.  Here, Defendants should not be responsible for other trademark violations by other retailers across the market."); *Alien Smoke Shop*, 2023 WL 3402589 at *2 (finding requested statutory damages of $150,000 unjustified, where plaintiff alleged only

1   one sale of one counterfeit infuser).

2          **2.     Costs**

3          A plaintiff who establishes a trademark violation "shall be entitled, . . . subject to the

4   principles of equity, to recover . . . the costs of the action."  15 U.S.C. § 1117(a).  GS requests

5   $993.25 in costs, "consisting of the filing fee ($402.00), the process server fee ($195.00), and

6   [GS]'s investigation fees."  Dkt. No. 22-4 ¶ 6.  While "[f]iling and service of process expenses are

7   reasonable and routinely awarded," at least one court in this district concludes that such pre-suit

8   investigation costs are not appropriate "costs of the action" under § 1117(a).  *See MSA-Bossy, Inc.*,

9   2023 WL 3604322 at *6.  GS has cited no authority to the contrary.

10         **3.     Permanent injunction and other equitable relief**

11         Courts "have power to grant injunctions, according to the principles of equity and upon

12  such terms as the court may deem reasonable, to prevent the violation of any right of the registrant

13  of a mark[.]"  15 U.S.C. § 1116(a).  GS must demonstrate:

14              (1) that it has suffered an irreparable injury; (2) that remedies
                available at law, such as monetary damages, are inadequate to
15              compensate for that injury; (3) that, considering the balance of
                hardships between the plaintiff and defendant, a remedy in
16              equity is warranted; and (4) that the public interest would not be
                disserved by a permanent injunction.
17

18  *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).  With respect to irreparable injury,

19  the Lanham Act provides:

20              A plaintiff seeking any such injunction shall be entitled to a
                rebuttable presumption of irreparable harm upon a finding of a
21              violation identified in this subsection in the case of a motion for a
                permanent injunction or upon a finding of likelihood of success on
22              the merits for a violation identified in this subsection in the case of a
                motion for a preliminary injunction . . . .
23

24  15 U.S.C. § 1116(a).  Injunctive relief "is a precise tool to fix a precise injury," and "should be

25  'narrowly tailored' to remedy the specific harm a plaintiff has identified 'rather than 'to enjoin all

26  possible breaches of the law.'"  *Facebook, Inc. v. OnlineNIC, Inc.*, No. 19-cv-07071-SI (SVK),

27  2022 WL 2289067, at *17 (N.D. Cal. Mar. 28, 2022) (quoting *Price v. City of Stockton*, 390 F.3d

28  1105, 1117 (9th Cir. 2004)) *report and recommendation adopted by* 2022 WL 17371092 (N.D.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Cal. Oct. 17, 2022).  Rule 65(d) "instructs courts to state the terms of the injunction specifically

2    and to 'describe in reasonable detail—and not by referring to the complaint or other document—

3    the act or acts restrained or required.'"  *Id*. (citing Fed. R. Civ. P. 65(d)(1)(B)-(C)).  Moreover,

4    Rule 54(c) "provides that default judgments 'must not differ in kind from, or exceed in amount,

5    what is demanded in the pleadings.'"  *Id*. (quoting Fed. R. Civ. P. 54(c)).

6           In its motion for default judgment, GS seeks the following permanent injunction enjoining

7    the Shop, "its agents, employees, officers, directors, owners, representatives, successor companies,

8    related companies, and all persons acting in concern or participation with it" from:

9                    infringing upon the Stündenglass Marks directly or contributorily, in
10                   any manner, including but not limited to:

11                           (a) Import, export, making, manufacture, reproduction,
                             assembly, use, acquisition, purchase, offer, sale, transfer,
12                           brokerage, consignment, distribution, storage, shipment,
                             licensing, development, display, delivery, marketing
13                           advertising or promotion of the counterfeit Stündenglass
                             product identified in the complaint and any other
14                           unauthorized Stündenglass product, counterfeit, copy or
                             colorful imitation thereof; [and]

15                           (b) Assisting, aiding or attempting to assist or aid any other
16                           person or entity in performing any of the prohibited activities
                             referred to in Paragraphs (a) above.
17

18   *See* Dkt. No. 22-1.  Additionally, GS seeks an order requiring that defendants "at their cost,

19   deliver to [GS] for destruction all products, accessories, labels, signs, prints, packages, wrappers,

20   receptacles, advertisements, and other material in their possession, custody or control bearing any

21   of the Stündenglass Marks."  *Id*.

22          GS has not demonstrated that it is entitled to the requested injunctive and equitable relief

23   for at least three reasons.  First, GS offered no argument or analysis in its motion for default

24   judgment to support such relief.  Instead, GS simply directs the Court to review "the reasons

25   explained in [GS]'s complaint[.]"  *See* Dkt. No. 22 at 10.  For the reasons discussed above, the

26   Court finds GS's allegations insufficient to satisfy the second and third *Eitel* factors regarding the

27   merits of GS's substantive claims and the sufficiency of the complaint.  Second, the scope of GS's

28   proposed injunction is overbroad in that it seeks to enjoin defendants from "[a]ssisting, aiding or

attempting to assist or aid any other person or entity" in performing prohibited activities—relief that is not sought in GS's complaint. *See* Dkt. No. 1 at 13-15.  Additionally, the proposed injunction purports to enjoin activities with respect to all three Stündenglass Marks, when GS has alleged only one sale and infringement of one mark that is not identified with any specificity. Third, GS's proposed injunction is impermissibly vague in that it does not identify with reasonable particularity "the counterfeit Stündenglass product identified in the complaint," much less "any other unauthorized Stündenglass product, counterfeit, copy or colorful imitation thereof[.]"

Accordingly, the Court recommends that GS's request for permanent injunctive relief be denied.

## IV.    CONCLUSION

Because not all parties have consented to the this Court's jurisdiction, it is ordered that this case be reassigned to a district judge.  For the reasons discussed above, it is recommended that the newly assigned district judge deny GS's motion for default judgment.

GS shall promptly serve defendants with this report and recommendation and file a proof of service with the Court.  Any party may serve and file objections to this report and recommendation within 14 days after being served. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Civ. LR. 72-3.

**IT IS SO ORDERED.**

Dated: June 22, 2023

VIRGINIA K. DEMARCHI
United States Magistrate Judge